JOSEPH GARRETT v. THE STATE.

WILLIAM H. GARRETT v. THE STATE.

1. A license from a county board of health to manufacture "fertilizers and materials" does not authorize such manufacture in a way to create a public nuisance. A request to charge that a license is a defence to an indictment for creating a public nuisance was properly refused, and a charge that such a license was no defence to an indictment for nuisance created by the licensees in their business, was unobjectionable.

2. The legislature has power to legalize, so far as the public is concerned, an act or business which would otherwise be a public nuisance, such grant being against .common right, should receive strict interpretation.

3. The powers conferred by the legislature upon boards of health of this state, are to restrain and suppress public nuisances, not to legalize their creation or continuance. Their methods are designed to be auxiliary to the ordinary modes of public protection.

On error to the Hudson Quarter Sessions.

The plaintiffs in error were convicted at the Hudson county Quarter Sessions upon the following indictment:

"The grand inquest of the State of New Jersey, in and for the body of the county of Hudson, upon their respective oaths, present:

"That William H. Garrett, late of the township of Kearny, in the said county of Hudson, on the first day of January, in the year of our Lord one thousand eight hundred and eighty-four, and on divers other days and times between that day and the day of the taking of this inquisition at the township, in the county aforesaid, and within the jurisdiction of this court, near to certain public streets and common highways, then and also near to the dwelling-houses of divers citizens of this state there situate and being, did unlawfully and injuriously put and place in certain buildings, messuages and tenements, and in the appurtenances thereto, then and there situate, a large quantity of filth, parts of bodies of

dead animals and entrails of dead animals, to wit: One thousand barrels of filth, one thousand barrels of parts of bodies of dead animals, and one thousand barrels of entrails of dead animals, and the said filth, parts of bodies of dead animals and entrails of dead animals, then and there, to wit, on the said first day of January, in the year of our Lord one thousand eight hundred and eighty-four, and on divers other days and times between that day and the day of the taking of this inquisition, at the township of Kearny aforesaid, unlawfully and injuriously then and there did, and still do keep and suffer to remain, lie and be, by means whereof divers noisome, noxious and unwholesome smells and stenches, during all the time aforesaid, and large quantities of noisome, noxious and unwholesome smokes and vapors, on the days and times aforesaid, then and there were emitted, sent forth and issued from the said buildings, messuages, tenements and appurtenances thereto, and the air in the neighborhood thereof and for a great distance round and about there, on the days and times aforesaid, was and still is greatly filled and impregnated with many noisome, noxious, unwholesome and offensive stinks and stenches during all the time aforesaid, has been and still is greatly corrupted and rendered unwholesome, to the great damage and common nuisance of all the good citizens of this state there inhabiting, being and residing, and going, returning and passing through and along the said public streets and common highways there, to the evil example of all others in like case offending, contrary to the form of the statute in such case made and provided, and against the peace of this state, the government and dignity of the same.

"And the grand inquest aforesaid, upon their oath aforesaid, do further present:

"That the said William H. Garrett, on the first day of January, in the year of our Lord one thousand eight hundred and eighty-four, and on divers other days and times, between that day and the day of the taking of this inquisition, at the township aforesaid, in the county of Hudson aforesaid, and within the jurisdiction of this court, near to divers public

streets and common highways, then and also near to the dwelling-houses of divers citizens of this state, there situate and being, did unlawfully and injuriously erect and build, and cause and procure to be erected and built, certain buildings and structures; and in said buildings and structures, after the erection thereof, did keep and maintain, for the purpose of rendering and extracting and removing lard, and grease and tallow, from parts of the bodies of dead animals and from filth and other stinking and unwholesome substances, and for other purposes to the grand inquest aforesaid unknown; and did then and there unlawfully make, construct and set up, and cause and procure to be made, constructed and set up, in the said buildings and structures, divers boilers, tanks, stoves, kettles, cauldrons, furnaces and other machinery and appurtenances, to wit, ten cauldrons, ten furnaces, and ten machines and apparatuses, for the purpose of rendering, extracting, and removing lard, grease, and tallow from parts of bodies of dead animals, and from filth and other stinking and unwholesome substances, and for other purposes to the grand inquest aforesaid unknown; and that the said William H. Garrett, on the said first day of January, in the year of our Lord one thousand eight hundred and eighty-four, and on divers other days and times, between that day and the day of the taking of this inquisition, at the township of Kearny aforesaid, in the county of Hudson aforesaid, unlawfully and injuriously did render, extract and remove from parts of bodies of dead animals, and from filth and other unwholesome and stinking substances, in and by means of the boilers, tanks, stoves, kettles, cauldrons, furnaces and other machinery and apparatus, so made, set up and placed in the said buildings as aforesaid, large quantities of lard, grease and tallow, to wit, two hundred tons of lard, two hundred tons of grease, and two hundred tons of tallow, by means of which said premises, divers noisome, noxious and unwholesome smells, smokes, vapors and stenches, on the days and times aforesaid, were sent forth, emitted and issued from the said buildings and erections, so that the air, on the several days and times afore-

said, at the township of Kearny aforesaid, in the county aforesaid, was thereby greatly filled and impregnated with said smells, smokes, vapors and stenches, and was rendered and became and still is corrupted, offensive and unwholesome and deleterious, to the great damage and common nuisance of all the good citizens of this state there inhabiting, being and residing, and going, returning and passing through and along the said public streets and common highways, to the evil example of all others in like case offending, contrary to the form of the statute in such case made and provided, and against the peace of this state, the government and dignity of the same.

"And the grand inquest aforesaid, upon their oath aforesaid, do further present:

"That the said William H. Garrett, on the first day of January, in the year of our Lord one thousand eight hundred and eighty-four, and on divers other days and times between that day and the day of the taking of this inquisition, at the township of Kearny aforesaid, in the county of Hudson aforesaid, and within the jurisdiction of this court, near to divers public streets and common highways there, and also near to the dwelling-houses of divers citizens of this state, there situate and being, unlawfully and injuriously did put and place, and cause and procure to be put and placed in certain buildings and other structures, and in the messuages and appurtenances thereto, large quantities of filthy parts of bodies of dead animals, entrails of dead animals and other unwholesome and stinking substances, to wit, one thousand barrels of filth, one thousand barrels of parts of bodies of dead animals, one thousand barrels of entrails of dead animals, and one thousand barrels of other unwholesome and stinking substances, and then and there, to wit, on the first day of January, in the year of our Lord one thousand eight hundred and eighty-four, and on divers other days and times between that day and the day of the taking of this inquisition, the said filth and the said parts of bodies of dead animals, entrails of dead animals and other unwholesome and stinking sub-

stances, then and there did boil, burn, grind up and otherwise compound and prepare, and cause and procure to be boiled, burned, ground up and otherwise compounded and prepared, for the purpose of rendering and extracting lard, grease and tallow from the same, and extracting and making other articles and preparations to the grand inquest aforesaid unknown, by means whereof divers large quantities of noisome, noxious and unwholesome smokes, smells, vapors and stenches, on the days and times aforesaid, then and there were emitted, sent forth and issued, and the air thereabouts, on the days and times aforesaid, was thereby greatly filled and impregnated with many noisome, offensive and unwholesome smells, stenches and stinks, and has been, during all the time aforesaid, corrupted and rendered very insalubrious, to the great damage and common nuisance of all the good citizens of this state there inhabiting, being and residing and going and returning and passing through and along the said public streets and common highways there, to the evil example of all others in like case offending, contrary to the form of the statute in such case made and provided, and against the peace of this state, the government and dignity of the same."

At the close of the testimony the defendants below requested the court to charge as follows :

"If the jury believe that a board of health and vital statistics established in the county of Hudson has enacted ordinances on the subject of carrying on the business carried on by the defendants, and under such ordinances has licensed the defendants to carry on the business, this prevents an indictment for nuisance during the continuance of the license."

The court refused so to charge, and a bill of exceptions was sealed. A bill of exceptions was also sealed to so much of the charge of the court as follows :

"The board of health and vital statistics of this county was established by act of the legislature, in 1874, I think, and have had supplements to their powers since that year. This board is authorized to license the carrying on of certain businesses, and to pass ordinances prohibiting the carrying on of

certain businesses within the county without a license. Apparently the object of the creation of that board was in some measure to protect the county from nuisances by giving it the control and regulation of such businesses as might be objectionable if carried on improperly or negligently and carelessly. It has authority to impose a penalty for conducting certain businesses without license, and also to restrict the carrying on of some kinds of businesses. The manufacture of fertilizers is a business within its control, and it is presumed that the board would not give a license or permit a given license to continue, unless it is satisfied that the business was being properly conducted. These defendants hold a license from that board, and one would be inclined to say that the board was satisfied, when that license was granted, that these people were going to carry on their business in a lawful way. The fact of the license being granted, however, does not prevent the indictment of the licensees of the board if they create and maintain a public nuisance. This the court charges you as matter of law. It is charged in answer to the request of defendant's counsel."

Argued before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and KNAPP.

For the plaintiffs in error, *Babbitt & Lawrence* and *Theodore Ryerson.*

*Contra, Charles H. Winfield, Prosecutor of the Pleas.*

The opinion of the court was delivered by

KNAPP, J. The plaintiffs in error were convicted, on trial before the Quarter Sessions of the county of Hudson, of the offence of maintaining a public nuisance in the said county. Their business was that of extracting fats from dead animals, and converting the rest into fertilizers. It was established by the finding of the jury that the process of manufacturing created nauseous and offensive odors to an extent sufficient to

create public annoyance. The plaintiffs in error had received a license from the board of health and vital statistics of the county of Hudson to carry on the business of manufacturing fertilizers, and they sought to vindicate their action in virtue of such license. This line of defence was distinctly presented in a request of the court to charge that "if the jury believe the board of health and vital statistics established in the county of Hudson has enacted ordinances on the subject of carrying on the business carried on by the defendants, and under such ordinances has licensed the defendants to carry on the business, this prevents an indictment for nuisance during the continuance of such license." This the court declined to charge, and charged that the fact of the license being granted did not prevent the indictment of the licensees of the board if they created and maintained a public nuisance. To this refusal of the request to charge, and to the charge as made upon that point, exceptions were duly sealed, and errors were assigned thereon. The action of the court thus excepted to presents the only questions for consideration here. The board whose licenses the plaintiffs in error set up in their justification was created by an act of the legislature entitled " An act to provide for a board of health and vital statistics in the county of Hudson, and to prevent the spreading of disease," passed March 27th, 1874. *Pamph. L., p.* 569. It gave power to the board to enact ordinances in relation to the public health, not inconsistent with the laws of the state, and to impose a penalty for their violation. By that act, power and authority to grant licenses was not conferred, but by a public act, entitled " An act concerning county boards established for the protection of public health and the registration of vital facts and statistics in the counties of this state," passed May 5th, 1884 (*Pamph. L., p.* 282), such boards were empowered to regulate and control or prohibit the carrying on of all trades and manufactures in said county, obnoxious or offensive to the inhabitants of such county or any part thereof, and which are attended by noisome or injurious odors (¶ 5, § 4), and to regulate, license and control all deal-

ers in bones, fat and animal offal or refuse whatsoever ; also all bone and fat-boiling or grease-making establishments. ¶ 6, § 4. The plaintiffs in error produced, on the trial, a license from the county board of health, to manufacture fertilizers and materials within Hudson county, on Hackensack river, Kearny township, for one year from the 1st day of July, 1884, subject to revocation for cause. This paper lays the foundation of the matters objected to at the trial.

The defendants invoke in their behalf a recognized principle that a public nuisance must be occasioned by acts done in violation of law, and that any business or pursuit which is authorized by law cannot be such nuisance. It is not denied that the legislature have the power to make lawful, so far as the public is concerned, a work or business which by the common law would otherwise be a public nuisance. An instance of the exercise of this power is found in the schedule of powers usually conferred upon railroad companies, many of which, in their unauthorized exercise, would amount to such public wrong. And it has not been questioned in this case that it is competent for the legislature, through its selected agents, to determine when, where and in what manner such business may be conducted.

Such legislation, however, being in derogation of the common law, must receive strict construction, and the public injury from which one holding such a grant would be protected must be the necessary results of the authorized business after the exercise of proper care, skill and diligence—employing careful servants and using processes least likely to produce detriment to the public. If he fails in any of these, and unnecessary injury results to the public, he becomes liable to indictment. 2 *Whart. C. L.*, § 1424.

In the light of these rules, and assuming that the licenses which the plaintiffs in error held were lawful authority for carrying on the business so licensed, is the proposition contained in their requests to charge one that is supportable in law ? What he asks the court to declare to the jury as a legal rule for their guidance is that the license of this board to

carry on a particular business is, under any and all circum-
stances, a protection against an indictment for nuisance grow-
ing out of such business.    It left no room for the considera-
tion of unnecessary or even reckless injury to the public in
the mode of manufacture.    This is the plain meaning of this
request, and had it been put to the jury as asked, no matter
how willful or extensive the offence to the public may have
been, it demanded, in virtue of the licenses, the acquittal of
the plaintiffs in error.    The proposition can find no support
or countenance in any legal rule.    But on looking into the
licenses, is there any authority given the plaintiffs in error to
create noisome odors and smells, and corrupt the air with
them, to the inconvenience of the public?    The authority is,
by the licenses, to manufacture fertilizers and materials in a
certain locality for one year.

Is it to be assumed that the necessary consequence of such
manufacture was to corrupt the air and produce public annoy-
ances?    Are we to infer from this grant that either the legis-
lature or the board acting in their behalf, designed to grant the
right under such terms to create what otherwise in law would
be a public offence?    Such is not its expression, and on every
recognized principle in the interpretation of such grants the
presumption would be against any such intent.    The object of
the legislation constituting boards of health and marking out
their duties was to prevent nuisances in conservation of the
public health.    With this purpose as the single object of their
creation and sole guide in action, it would be novel indeed to
find in such words a license to effect a public nuisance.    In
either of these views the judge was clearly right in refusing
to charge as requested.    I am also of opinion that the objec-
tion to the charge as made is not supportable.    It is to be
observed that the charge given which was objected to was in
answer to the plaintiff's request.    The judge had, in a former
part of the charge, clearly defined a public nuisance.    He had
instructed the jury that the business of manufacturing fertil-
izers was a lawful business when the manner of its conduct
was not hurtful or offensive.    He had declared the law in this

case to the jury in these words : " When a lawful business is conducted in an unlawful manner, so that it is injurious and interferes with the rights of those about him, then that offensive method of conducting the business may be abated, and the parties guilty of it may be punished by indictment if it has become a public nuisance." The plain deduction from what was said in answer to the request is that no inference was to be drawn from the license which the plaintiffs held, that they were authorized to inflict injury upon the public by their mode of conducting the business and that they were responsible if thereby they created a nuisance to the public. If the language used can be understood as an instruction that these licenses can in no wise impair the common law right of the public to be protected against unwholesome and noxious odors I would still regard it as a correct exposition of the law.

The purpose which the legislature had in view in creating boards of health was to supply additional means to prevent disease and discomfort, such as might arise from contamination of air, water or food. These means were designed to be auxiliary to existing public methods of protection. It was no part of that purpose to legalize or protect any of the sources of such evil.

It is a mistake to ascribe to this legislation a design to grant immunity from the ordinary legal consequences of creating or continuing a public nuisance. Such design is not to be found in the causes which gave rise to these enactments, and no words found in the acts express or suggest a power in the several boards of health to license offences against the public health and comfort. Their powers, large as they are, are granted solely for the repression, not the creation or protection of nuisances. The power to license is given as a means of exercising restraint and control over doubtful pursuits, as to those noxious in nature or becoming so by carelessness. The sole power given, or designed to be given, is to abate and suppress.

Business not unlawful in itself may be brought under control by safe and proper regulations touching modes of con-

Brown v. South Orange.

ducting such business, to avoid offence to the public. But such boards have not been endowed with power to grant away the public right to pure and uncontaminated air.

If it be as the plaintiff in error contends, under a class of laws declared to be enacted for the protection of the public health, power has been conferred upon these local agencies, broad enough to permit, through the form of a license, the establishment in the midst of our largest cities, of the most dangerous and intolerable nuisances. This cannot be conceded.

The evidence offered at the trial has been brought here with the return to the writ. We cannot look into this, but must assume that the convictions rest upon competent and sufficient evidence.

We think there was no error in the refusal to charge as requested or the charge as given, and the judgment should be affirmed.