THE STATE, MARY A. REED, PROSECUTOR, v. THE CITY
OF CAMDEN AND THE PENNSYLVANIA RAILROAD
COMPANY.

1. The city of Camden has power by its charter, and the statute relating
   to railroads and canals (*Rev.*, p. 944, ¿ 163), to pass an ordinance
   vacating part of a public street, and contracting with a railroad com-
   pany for an elevated approach in the remaining part of the street to
   the abutments of a bridge to be constructed across railroad tracks laid
   in another street, and for a depression of said tracks; giving compen-
   sation to abutting landowners sustaining peculiar damages to their
   private rights.

2. The duty of a railroad company to construct and keep in repair good
   and sufficient bridges or passages where any public road shall cross
   the same, is continuous.

3. The consent of a majority of owners in interest of the lots fronting
   on the part of the street proposed to be altered, which has been built
   upon, will not be required under the Road act of 1858. *Rev.*, p. 1009,
   ¿ 73.

On *certiorari* to review an ordinance of the common coun-
cil of the city of Camden.

Argued at November Term, 1890, before Justices DEPUE
and SCUDDER.

For the prosecutor, *Thomas E. French.*

For the city of Camden, *J. Willard Morgan.*

For the Pennsylvania Railroad Company, *S. H. Grey.*

The opinion of the court was delivered by

SCUDDER, J.   The city council of the city of Camden
passed an ordinance September 26th, 1889, entitled "An
ordinance to change the lines and grades of Bridge avenue
from Second street to Fourth street, and Second street from
Federal street to Stevens street, and to vacate a portion thereof,
and to authorize the construction of a bridge across Bridge

avenue at Second street." Under this ordinance certain proceedings were taken for condemnation within the charter. This ordinance and these condemnation proceedings are the subject matters for review under this writ of *certiorari.* The questions raised are not as to the expediency or the reasonableness of the action of the city council, for these, or the return made, can scarcely be doubted. The report made by the committee on streets and highways, submitting the ordinance for the approval of the common council, says: "That they attended to the duty assigned them, and have carefully examined the various details appertaining to the construction of said bridge, and are of the opinion that the plans submitted appear to be the only possible ones to permit the public at all times to have free, safe and uninterrupted travel over the *extremely dangerous railroad crossing.*" The city council adopted the report and passed the ordinance. The facts appear to fully justify the report and ordinance for the protection of the public in using this crossing.

Second street is sixty-six feet in width, runs north and south, and is one of the principal streets in the city. Bridge avenue is one hundred feet in width, runs east and west, intersecting Second street. On this avenue the Camden and Amboy Railroad Company constructed its track in 1832, running down to its terminal point or the Delaware river, at the foot of the street. There are now seven tracks laid within the width of Bridge avenue, and the number of trains passing over them, on the same grade with Second street, makes this crossing a place of peculiar danger; and there have been serious accidents to persons traveling along Second street at this point.

The purpose of the ordinance is to concur with the Pennsylvania Railroad Company, which is now the lessee of this railroad and operating the same, in making a bridge over the tracks of the railroad in Bridge avenue, by depressing that avenue about three feet, and elevating Second street, by a gradual approach, to about seventeen feet in height at the point where it intersects Bridge avenue. To effect this pro-

posed bridge crossing, the ordinance directs that the lines and grades of Second street and Bridge avenue be as laid down on a map or plan submitted by the city surveyor and adopted by the council; that part of Bridge street be vacated, leaving it forty feet wide for street purposes, and that part of Second street be vacated; that the Pennsylvania Railroad Company be authorized, empowered and directed to construct, at its own expense, an iron bridge over its railroad, and the necessary approaches thereto, using the western half of Second street for that purpose; to move and depress its tracks so that all that part of Bridge avenue south of the north line thereof, as thereby established, shall be entirely clear of all railroad tracks; the railroad company to execute and deliver to the city a bond of $100,000 to indemnify and save harmless from all suits for damages; to make and keep the bridge, &c., in repair. These are the general features of the ordinance.

The supervisor of highways was authorized to treat with the property owners fronting on Second street, and on his report, that he was unable to treat and agree with such owners, nine disinterested freeholders of the city of Camden, one from each ward, were appointed, according to the charter, to assess the damages that these owners might sustain by the altering of the line of said street, or the grade thereof. Their report awarded, among others, $4,500 to the prosecutor for her damages. She owns land fronting one hundred and twenty-five feet on the west side of Second street, where the street is elevated. Their report was ratified and confirmed by the common council.

It is not questioned that the plaintiff will sustain special damage, and that her private individual right will be injuriously affected by the proposed taking of that part of her land which is in Second street, between the middle of the street and the house line, for the southern approach to the bridge; and that statutory provision is made to give compensation for the loss that will be sustained by the vacation and filling in of the portion of the street in front of her property; and that under the charter and ordinance an effort has been made to

give her such compensation. The public rights in the required part of the street have been vacated and surrendered by the ordinance. With legislative authority this may be done. *Hoboken Land and Improvement Co.* v. *Hoboken,* 7 *Vroom* 540. Hence, the position upon which the plaintiff stands is, that the city council has no legal authority to condemn her private right to the land lying in the street, and by filling in to the height of about four and a half feet in front of her house and lot of land, to make an approach to the bridge.

The charter of the city of Camden (*Pamph. L.* 1871, *p.* 210) gives to the city council the usual power by ordinance to widen, level, grade and regulate streets, highways and bridges (section 30); and by section 76 it has exclusive control over the highways, roads, streets and alleys of the city. Section 79, under which they appear, by the preamble of the ordinance, to have acted in this case, says: "That it shall be lawful for the said city council to lay out and open any street, road or highway in any part of said city, and to cause any street, road, highway or alley, already laid out in any part of the said city, to be vacated, opened, altered, widened, whenever and so often as they shall judge the public good requires the same to be done," &c. It provides also for notice, appointment of commissioners, and compensation to landowners for damages that will be sustained by laying out, altering or widening any such street, road, highway or alley. Reading the whole section together, it appears that the word "altering" must be held to relate to the other changes contemplated in streets not included in the words "laying out" and "widening." This will, therefore, include the term "vacated," in the first part of the section, to make the power conferred complete in its operation.

Additional authority is also given to this city, with other cities in our state, by the statute relating to railroads and canals (March 19th, 1874). *Rev., p.* 944, § 163. This section enacts "That the proper municipal authorities, respectively, of any city of this state, be and they are hereby authorized and empowered to enter into such contracts with

any of the railroad companies whose roads enter their cities, respectively, to secure greater safety to persons and property therein, whereby the said railroad companies may relocate, change or elevate their railroads within said cities, or either of them, as in the judgment of such municipal authorities, respectively, may be best adapted to secure safety to life and property and promote the interest of said cities respectively, and for that purpose shall have power to vacate, alter the lines and change the grades of any streets or highways therein, and do all such acts as may be necessary and proper to effectually carry out such contracts ; and any such contracts made by any railroad company or companies as aforesaid with said cities, or either of them, are hereby fully ratified and confirmed." This section was brought to the attention of the court in *Dodge* v. *Pennsylvania R. R. Co.,* 16 *Stew. Eq.* 351, 353 ; *S. C.,* 18 *Id.* 366, and was unchallenged by the parties or the court.

The railroad company is also under an obligation to give security to the public travel by making suitable bridges or passages for its protection. Section 15 of the charter of the Camden and Amboy Railroad and Transportation Company (*Pamph. L.* 1830, *p.* 88), under which the Pennsylvania Railroad Company is acting in the maintenance of the railroad at the point in controversy, enacts " That it shall be the duty of the company to construct and keep in repair good and sufficient bridges or passages over the said railroad, or roads, where any public or other road shall cross the same," &c.

This duty is continuous and changing, as travel and traffic increase and vary in their demands for public accommodation and safety. *State* v. *Central R. R. Co.,* 3 *Vroom* 220. The city streets and the railroads must be adjusted from time to time to meet these public exigencies, and the legislature intended to confer the necessary power by the statutes above cited. Both parties are *quasi* trustees, acting for the interest of the public in making, controlling and maintaining highways, and their duties are correlative. Hence, the statute speaks of contracts between these parties to secure the safety

of lives and property as if both had the capacity to make contracts for these purposes, and it is undoubted that they have such power. In the exercise of this authority and duty they have made the contract contained in this ordinance, which recites that the railroad shall and may construct a bridge on Second street as part of that highway, crossing their tracks along Bridge avenue, and the necessary approaches thereto, at their own expense, and execute and deliver to the city a bond in the sum of $100,000 to indemnify and save harmless the city of Camden of and from all suits for damages occasioned by or on account of the privileges or conditions granted by the ordinance. This ordinance has been accepted by the railroad company, a bond for $100,000 has been executed and delivered to the city, and the work has been commenced.

The city authorities are acting within the terms of their charter, and provision is made for the payment of any special damages which the plaintiff may show that she will sustain; there will be, therefore, no taking of private property, or injury inflicted, without just compensation.

It is objected that Second street was dedicated by the former owner, when the property was originally laid out in lots, many years ago, as a public street, and that the city cannot divert or use it for any other purpose.

There is no diversion by vacating a part to make a proper approach, and constructing a bridge which will be in the line of the street, form a part of it, and be used as such, by legislative authority. The street has been accepted, worked and used as a public highway for more than fifty years, and is subject to the same power and control as other streets in the city. The fact of dedication cannot affect the reciprocal rights of the plaintiff and the public, so long as the street is kept open and used for the purposes of the original dedication. The case of *Ballantine* v. *Kearny Township,* 23 *Vroom* 338, which has been cited as denying the authority of the city to build or authorize the building of the approach to this bridge in Second street, does not control this case, for the bridge across the Passaic river was being built by distinct legislative

authority, without any power in the municipality to condemn the lands of the prosecutor necessary for the approach as if it were a street. It is enough to say that there was no legislative authority for the township to condemn the owner's land for that purpose, while in this case such authority is given.

The remaining reason for vacating this ordinance, and the proceedings under it, is, that section 73 of the Road act (*Rev.*, *p.* 1009 ; *Pamph. L.* 1858, *p.* 415) says : " That the grade of no street in any city or town which has been built upon shall be altered, unless by the consent of the majority of owners in interest of the lots fronting on the part proposed to be altered, nor without paying to the owners of such buildings the damages sustained by the alterations of such grade." This act has been construed and applied in *State, Vanatta* v. *Morristown*, 5 *Vroom* 445 ; *Stretch* v. *Hoboken*, 18 *Id.* 268.

It is evident, if this section controls a case like the present, that the difficulty of elevating or depressing railroad crossings, for the purpose of protecting the public in using them in cities, will be greatly increased, for one or more owners of land fronting on the part proposed to be altered may dictate the terms on which their consent will be given and the improvement made. Their right is to have full payment for all special and peculiar damages that will be sustained by them as owners of the buildings or lands, by the proposed alteration, when it becomes necessary for public use and for public safety. This compensation has been secured by the act of March 19th, 1874, by which city authorities may contract with railroad companies for relocating, changing and elevating railroads within cities to secure the safety of lives and property, and by the charter and ordinance of the city of Camden in question in this case. Both the charter and this statute are subsequent to the act of 1858, which requires the consent of landowners to changing the grade of streets which have been built on, and when construed together constitute an exception to the general law relating to the grading of streets in cities.

The *certiorari* will be dismissed, with costs.      . . . .