STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. ERIE RAILROAD COMPANY, PLAINTIFF IN ERROR.

Argued March 18, 1913—Decided June 18, 1913.

1. On the trial of an indictment against a railroad company for nuisance in negligently emitting dense smoke from its locomotive engines, the court, after properly charging that the defendant had the right to burn soft coal in the operation of its road and could be convicted of nuisance only upon proof of negligence, left it to the jury to say whether or not the use of soft coal was in itself negligence. *Held*, error.

2. Where the doing of a thing that would otherwise be a public nuisance is authorized by the legislature, the doing of that thing by the person so authorized in the manner and for the purpose authorized cannot constitute a public nuisance in the absence of negligence, and such negligence must consist of something more than the mere doing of the authorized act.

3. An erroneous instruction is not cured or rendered harmless by reason of the fact that a correct instruction upon the same point was also given.

On error to the Supreme Court, whose opinion is reported in 54 *Vroom* 231.

For the plaintiff in error, *Gilbert Collins* and *George S. Hobart.*

For the defendant in error, *Robert S. Hudspeth,* prosecutor of the pleas, and *Pierre P. Garven.*

The opinion of the court was delivered by

GARRISON, J. This writ of error brings up the judgment of the Supreme Court affirming the judgment of the Hudson Quarter Sessions convicting the plaintiff in error of maintaining a common nuisance by the emission of dense smoke from its locomotive engines.

The facts charged in the indictment, and the evidence produced at the trial, together with the trial errors complained of, especially with respect to the charge of the court, suffi-

ciently appear in the opinion of the Supreme Court. That opinion, after stating that the defendant under its charter had the right to use any sort of coal necessary for the efficient operation of its road, laid down the general proposition that for a nuisance resulting as an incident of such use, independently of negligence, the railway company was not responsible. In laying down this proposition the court below followed the case of *Morris and Essex Railroad Co.* v. *State,* 7 *Vroom* 553, in which this court followed the case of *Vaughn* v. *Taff Vale Railway Co.,* 5 *Hurlst. & N.* 679, in which Chief Justice Cockburn stated the general principle to be that "where the legislature has sanctioned and authorized the use of a particular thing and it is used for the purpose authorized and every precaution has been observed to prevent injury, the sanction of the legislature carries with it this consequence, that if damage results from the use of such thing, independently of negligence, the party using it is not responsible." The Court of Exchequer Chamber, thus speaking through Chief Justice Cockburn, followed the decision of the Court of King's Bench in *King* v. *Pease,* 4 *Barn. & Ad.* 30, which was an indictment against a railway company for a smoke nuisance not distinguishable in principle or on its facts from the case now before us. In that case the judgment delivered by Baron Parke was that such incidental interferences with the rights of the public must be taken to have been contemplated and authorized by the legislature in return for the public benefits derived from the railway, and hence did not and could not constitute a nuisance at common law.

The principle which has thus been adopted and followed by the courts of this state, notably in the case of *Beseman* v. *Pennsylvania Railroad Co.,* 21 *Vroom* 235, justified the Supreme Court in saying that "Wherever the question has been raised in this jurisdiction, negligent operation alone presents the *ratio decidendi,* whether it be upon an application for equitable relief against a conceded private nuisance, or in a prosecution under the criminal law upon an indictment for creating and maintaining a public nuisance; for the law is well settled that for mere incidental damage accruing by rea-

son of the authorized and proper operation of the railroad, the company is exempt from liability upon the principle of *damnum absque injuria,"* and "in suits for such injuries negligence is the gist of the action."

A necessary corollary of this proposition, and an essential part of the doctrine as applied to public nuisances, is that the negligence that will thus transform the doing of a legislatively authorized act into a common law nuisance must be something more than the mere doing of such authorized act, *i. e.,* there must be evidence of negligence *dehors* the mere doing of the act which, by force of the legislative sanction, is not in itself a nuisance.

Unless this be so, the doctrine in question is an empty formula under which the authority granted by the central legislative body may be nullified by judicial action confined to particular subdivisions of the state.

In the case of a railway it is not perceived how such legislative grant can be rendered effective or the road operated under it if each county through which it passes may proscribe the use or one or another of the various methods of operation in actual use upon no other evidence of negligence than that the doing of the act authorized by law creates a condition which but for such law would be a public nuisance.

I am not intimating that, with the advance of knowledge, improvements in railroad methods and equipments may not become so generally employed and their practical utility so conclusively demonstrated that the failure of a given company to know of them or to adopt them would not be evidence of negligence, as is suggested by the opinion recently delivered in *State v. New York Central and Hudson River Railroad Co., ante p.* 140.

We are not now dealing with that question but with the particular doctrine that the mere doing of an authorized act is not of itself evidence of negligence.

Briefly stated, the doctrine of our cases is that where the doing of a thing that would otherwise be a public nuisance is authorized by the legislature, the doing of that thing by the person so authorized, in the manner and for the purpose au-

thorized, cannot constitute a public nuisance in the absence of negligence, and such negligence must consist of something more than the mere doing of the authorized act.

Under this doctrine the defendant below was wrongly convicted if the jury was permitted under the charge of the court to find that the defendant was guilty of maintaining a public nuisance merely because it did an act authorized by the legislature, i. e., used soft coal; or, to put it in another way, if the jury was permitted by the charge to find that the use of soft coal was in itself the negligent act that would render the doing of the act thus authorized a public nuisance. Such an instruction would be at once self-contradictory and a complete frustration of the established doctrine, for plainly what it amounts to is this, viz., that although the authorized use of a thing is not a nuisance unless made so by the negligent act of the user, yet the mere use of such thing may constitute the negligent act by which such authorized use becomes a nuisance. Clearly, this is neither a logical nor a legal application of the principle by which the present case is controlled.

We do not understand that the Supreme Court sanctioned any such instruction or that its opinion gives countenance to any such impairment or misapplication of the doctrine it had laid down; on the contrary, we understand that it was precisely because the Supreme Court thought that such an instruction, if given, was cured by other parts of the charge that it affirmed the judgment of the Quarter Sessions. We are unable to reach this conclusion, and, upon the contrary, find that such erroneous instruction was given and that it was not cured or attempted to be cured by anything in the charge.

In the main charge of the court this language is used:

"There has been testimony to the effect that this condition of things is due partially to the use by this company of soft coal as fuel. There has been further testimony—you will recollect it—to the effect that these engines and this property can be maintained without the use of soft coal. There has been testimony produced here to the effect that by the expenditure of certain sums of money the use of the fuel that

it is contended causes some of this inconvenience can be done away with altogether in that particular community. You are to take all *that evidence* into consideration in determining whether or not this defendant has exercised ordinary care in the operation of its property—whether or not this defendant has been negligent in the performance of its duty to the public. If, in the exercise of ordinary care, this company could have operated this road so as to prevent the destruction of comfort and property to the people of this community, and the company failed in that duty, then the liability of the company would be clear."

Inasmuch as the jury had been correctly charged that the defendant was authorized by its charter to use soft coal in the operation of its road and was liable only for a nuisance resulting from its own negligent acts, the language quoted, which made the defendant's use of soft coal the test of its negligence in using it, was erroneous, for the reason that such act of negligence consisted of nothing more than the mere doing of such authorized act. The idea thus sought to be conveyed to the jury was again stated in response to a specific request to charge.

The request was that the court should charge that "under its franchises as a railroad company, the defendant during the period alleged in the indictment had a legal right to burn soft coal." Instead of charging this the court instructed the jury thus: "I will charge you that this company had the legal right to burn soft coal or any other kind of fuel that they might determine to be essential to be used by the company in its business, provided always that it uses ordinary care to satisfy its legal obligation to operate its property without negligence; and witnesses have testified—one of the witnesses for the defence—that other kind of fuel could be used under certain circumstances in the operation of this road, and that the use of that other kind of fuel might have prevented some of the conditions complained of here. You have the right to take that evidence into consideration in connection with all the evidence in the case in determining whether or not under

such circumstances—having in view all the conditions—the burning of soft coal under such circumstances was negligence on the part of the defendant company."

If this instruction left any doubt that the burning of soft coal might be found by the jury to be "in itself" negligence, such doubt is removed by the statement that follows, viz.: "The company has no right, no legal right, to arbitrarily maintain a nuisance under any circumstances of the case, and if the use of a particular kind of fuel was *in itself* negligence and worked an injury to the public at large, why that conduct *in itself* might be sufficient for you to say that this company was responsible in law for the maintenance of a nuisance."

Such an instruction was clearly erroneous, in that it left it open to the jury to find that the mere doing of an act authorized by the legislature was of itself proof of negligence in the doing of such act. For this error by which the defendant below was deprived of the benefit of the established doctrine of this court, the judgment of the Supreme Court should be reversed unless, as that court thought, the error that we have pointed out was cured or rendered harmless by other parts of the charge. We fail to find that this was done, and do not see how it could be deemed to have been done in view of the fact that the error in question occurred at the close of the charge and after the statements of the law that are said to be curative had been made. If a judge makes a mistake in charging the jury, he may undoubtedly cure it by calling attention to it as a mistake and directing the jury to disregard it or to substitute for it a later statement of the law. Nothing of that sort was done in the present case, where the most that can be said is that two statements of the law were made to the jury, one of which was erroneous. Unless we conceive of our trial system as one in which the jury is clothed with the capacity to decide between two judicial statements of the law and unerringly to select the correct statement and to disregard the incorrect, the error of the charge in the present case was not cured or rendered non-injurious to the defendant who excepted to it.

The judgment of the Supreme Court is reversed, to the end that a *venire de novo* may be awarded.

*For affirmance*—KALISCH, WHITE, JJ.   2.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, VOORHEES, BOGERT, CONGDON, TERHUNE, HEPPENHEIMER, JJ.   9.