UNITED NEW JERSEY RAILROAD AND CANAL COMPANY et al.

*v.*

FREEHOLDERS OF HUDSON AND ESSEX.

[Submitted March 15th, 1918.   Decided March 15th, 1918.]

1. The right of a railroad to build a road and carry it across a public plank road by an overhead bridge is absolute, and the consent of the municipal authorities is necessary only when it is desired to cross at grade, which consent must be obtained from the municipality even in crossing a county road.

2. A railroad having such absolute right will suffer irreparable injury, entitling it to an injunction against the county authorities interfering with such work if the use of a railroad partly constructed up to the roadway is delayed for want of a bridge.

3. Even if it could not show such irreparable injury, the court should see that the public work for the government is not hampered, the proposed bridge being necessary for industrial works aiding the prosecution of the war.

4. Where such railroad has the right to place the abutments of such bridge within the road, but, nevertheless, proposes to place them outside, it has a right to construct a temporary bridge with abutments inside the road.

5. Where the county superintendent of roads caused the arrest of the railroad's engineer for bridging the road, and the superintendent had been prior thereto suspended, it being plain that the superintendent's acts accorded with the views of the county authorities, objection that the superintendent's action was not that of the county authorities was purely technical.

On bill, &c.   On order to show cause.

*Messrs. Vredenburgh, Wall & Carey,* for the complainants.

*Mr. John J. Fallon,* for the freeholders of Hudson.

*Mr. Herbert W. Taylor,* for the freeholders of Essex.

GRIFFIN, V. C.

The bill in this cause is filed by the complainants against the joint boards of Hudson and Essex counties to restrain interference with the complainants in the construction of a bridge across the Newark plank road (now called Lincoln Highway), forming a connecting link in a railroad duly laid out on both sides thereof.

The joint boards are in possession of the plank road at the point in question. The history of the road and the title of the two counties may be found in *In re Newark Plank Road and Bridges, 63 N. J. Eq. 710.*

The road is in the township of Kearny.

A petition was presented to the boards by the complainants to build this bridge. The Essex board granted the permission, subject to the approval of the Hudson board. The Hudson board denied the request. Thereupon, notice was given by the counsel of the complainants to the Hudson board that on the 25th of February, 1918, they would commence the construction of the bridge. On that day they entered on the road for this purpose. The bill charges that one Dugan, the superintendent of the Newark plank road and bridges, an appointee of the joint boards, caused the arrest of the complainants' engineer to stop the work; hence, this bill is filed.

The Hudson board alleges that Dugan had been suspended as such superintendent and had no authority to act in the premises.

The Essex board does not appear to oppose the action of the complainants; on the hearing its counsel merely read the resolution passed by his board granting the permission, subject to approval by the Hudson board, and rested.

The exigencies of the case are such that no time should be lost in disposing of the matter. On the Hackensack meadows,

between the two rivers, and on both sides of this plank road, shipbuilding and other industries, employing many thousands of men, have been recently established to aid the government in prosecuting the war. Adequate transportation for men and materials is of prime importance, without which works of great public necessity will be greatly retarded.

The Hudson board opposes the granting of the injunction on the following grounds:

*First.* That no irreparable injury will be suffered by the complainants if the case be delayed until final hearing.

*Second.* That the complainants desire to build a temporary bridge until they can procure the girders for the permanent bridge. (These girders are to be one hundred and six feet in length. The supporting abutments are to be constructed outside of the lines of the road. To procure these girders will take several months.) In erecting the temporary bridge the abutments will be placed inside the curb line, in compliance with the Railroad act. *3 Comp. Stat. p. 4232 § 27.*

1. Will the complainants suffer irreparable injury? The right of the complainants to build the road and carry it across the plank road with an overhead bridge is absolute. No consent of the municipal or county authorities is necessary. It is only when it desires to cross at grade that a consent becomes necessary; and that consent must be obtained from the municipality, and not from the county, even when crossing a county road. *Freeholders v. Railroad Company, 68 N. J. Eq. 500; affirmed, 70 N. J. Eq. 806.* This counsel for the Hudson board concedes. It is, therefore, apparent that the complainants will suffer an irreparable injury if, with their right clear, with the railroad partly constructed up to the roadway, the use of it is delayed for want of a bridge. But, in addition to this, if the complainants would not suffer an injury which might be said to be irreparable, the public necessity at the present time is paramount, and should outweigh questions of private consideration; and the court should see to it that public work for the government, in its aid, is neither hampered nor impeded. Especially is this so in this case, where the right of the complainants is clear, and the injury defendants will suffer, if any, is trifling, and is injury, if any,

that is not legal, affording them any right, because it is occasioned by operation of the law.

2. Counsel for the Hudson board, however, makes a distinction between a permanent and temporary bridge. He cites no authority to support his view. I am unable to follow his reasoning, considering that the temporary bridge is an added expense, incurred only to accommodate transportation pending the construction of the permanent structure. If his theory is correct, it would lead to very dangerous results. It is common municipal practice, in replacing old bridges with new, to provide in the contracts for the erection of a temporary bridge pending the construction of the new one, as an incident; and the cost of such temporary bridge is charged against the cost of the new structure, without the statute particularly authorizing the erection of the temporary bridge. If such power does not exist, whenever the county desired to replace an old with a new bridge, all traffic on the highway would be cut off for a long period, to the great detriment of the public. But, apart from this, the complainants, if they desired, might, under section 27 of the Railroad act, *supra,* treat this temporary structure as permanent, to the detriment of the road. Instead of taking advantage of the benefit conferred by the act to maintain their abutments within the road they propose, at an additional expense, to replace the temporary structure with one, the abutments of which shall be outside of the lines of the road.

3. The third objection is purely technical. The complainants believed, when they filed their bill, that Dugan, as superintendent, was acting under the orders of the officers of the boards. The Hudson board does not disclaim an intent to stop the erection of this bridge. It says that if another petition is presented, it is willing to permit the construction of a temporary bridge over the Lincoln Highway (the Newark plank road), and the maintenance thereof during the period of the war, upon such reasonable terms and conditions as might be agreed upon. This expression of views, coupled with the attitude of counsel with respect to the temporary bridge, clearly indicates the opposition of the Hudson board to the crossing of the highway, and plainly

indicates that what Dugan did accords with their views, whether or not he had been suspended.

No criticism can be made of the Hudson board for its action. It is doing what it conceives to be its duty in the protection of the public highway; but, believing, as I do, that there is an absolute right, without its consent, to erect this bridge, and owing to the existing state of war rendering it necessary that these works should, as early as possible, have the most adequate railway facilities, I will advise an order that the joint boards be enjoined from interfering with the complainants in the construction of the temporary bridge.

The order of restraint, however, must specifically provide that the joint counties, through their engineers, shall supervise the work, with power to see that no unnecessary damage is done to the road, that, upon completion of the temporary structure, the road at the point in question be placed in suitable condition for public travel and so maintained during the existence of the temporary bridge, and, upon its replacement by the permanent structure, that the road be placed in as good condition as it was before the surface was broken.

Counsel may present the order to me at the chancery chambers, at Jersey City, on Monday morning next, March 18th, at ten o'clock.