**DELAWARE, L. & W. R. CO. v. CHIARA et al.**

No. 6520.

Circuit Court of Appeals, Third Circuit.

March 16, 1938.

John L. Ridley, of Jersey City, N. J., for appellant.

I. Charles Lifland, of Jersey City, N. J. (Louis Bort, of Jersey City, N. J., of counsel), for appellees.

Before BUFFINGTON, DAVIS, and BIGGS, Circuit Judges.

BIGGS, Circuit Judge.

The appellees brought suit against the appellant railroad company to recover for personal injuries and property damage sustained when an automobile owned and operated by the appellee Joseph Chiara, upon April 9, 1935, at approximately 2:15 a. m., ran into a concrete foundation serving as the base of the central support of a railroad bridge erected and maintained by the appellant and crossing Henderson street, a public street or highway in the city of Jersey City, N. J. The appellee James Chiara was a passenger in the automobile.

The sole question presented for our consideration is whether or not the structure in question was a lawful one, sanctioned by legislative and municipal authority. Under the law of New Jersey, as construed by the Court of Errors and Appeals, any unlawful obstruction of a highway is prima facie a nuisance and the party responsible for it is liable in damages to one injured thereby. It is equally well settled that the Legislature may legalize what otherwise might be a nuisance. Lorentz v. Public Service R. Co., 103 N.J.L. 104, 106, 134 A. 818, 49 A.L.R. 989; Hinchman v. Paterson Horse Railway Co., 17 N.J.Eq. 75, 86 Am.Dec. 252; Halsey v. Rapid Transit St. R. Co., 47 N.J.Eq. 380, 20 A. 859; Paterson Railway Co. v. Grundy, 51 N.J.Eq. 213, 26 A. 788; Beseman v. Pennsylvania Railroad Co., 50 N.J.L. 235, 13 A. 164; State v. Lackawanna Railroad Co., 84 N.J.L. 289, 86 A. 386; State v. Riggs, 91 N.J.L. 456, 106 A. 216, appeal dismissed 92 N.J.L. 575, 106 A. 467; Garrett v. State, 49 N.J.L. 94, 693, 7 A. 29, 60 Am.Rep. 592; Simmons v. Paterson, 60 N.J.Eq. 385, 45 A. 995, 48 L. R.A. 717, 83 Am.St.Rep. 642; State v. Erie Railroad Co., 84 N.J.L. 661, 87 A. 141, 46 L.R.A.,N.S., 117. If the structure here in question is in fact a lawful one, members of the public, including the appellees, are required to take notice of its presence and situation, and the learned trial judge should have directed a verdict for the appellant as prayed for by it.

The facts may be briefly stated as follows: Upon August 28, 1928, the board of commissioners of the mayor and aldermen of Jersey City passed an ordinance authorizing the appellant, in accordance with blueprints submitted by it, to build a bridge supported by "* * * circular concrete columns· located along the center line of the street and along each proposed curb line. * * *" An examination of these prints discloses that the center piers, contemplated as support for the bridge, were to be sunk into the surface of the street. Due to the presence of water mains and sewers at this point, however, the bridge was not constructed as provided by the ordinance of August 28, 1929, but in fact the center piers of the bridge were rested upon the concrete foundation heretofore referred to. After the bridge was constructed, and in the latter part of January, 1934, the appellant, being aware that the bridge was not constructed as provided by the authorizing ordinance, petitioned the board of commissioners to the end that it, by ordinance, might ratify and confirm the "* * * construction

of the foundations of the center line columns of said bridge and of said concrete chamber * * *" and grant permission to the appellant "* * * to maintain said bridge and all parts thereof, including the foundations of said center line columns as constructed. * * *" Upon March 6, 1934, this ratifying ordinance was passed by the board of commissioners.

The appellees make two contentions: First, that the board of commissioners was without power to ratify the structure of the bridge as it was actually built by the ratifying ordinance of March 6, 1934; second, that the bridge as constructed, even if built pursuant to an authorizing ordinance, was none the less a nuisance because it was not sanctioned by legislative authority.

The first contention may be disposed of briefly by stating that we can see no reason why municipal authorities by ordinance cannot ratify acts done precisely as an individual or corporation may do so. To hold otherwise, in our opinion, would be to place an undue restraint upon the acts of municipal authorities in the exercise of functions imposed upon them by law. The appellees cite no authority for the proposition so advanced by them and a search discloses none. We are therefore constrained to reject this suggestion.

The second contention advanced by the appellees is plausible and requires careful consideration. It may be stated as follows: The appellees contend that the bridge as constructed with the concrete foundation supporting the center piers placed in the middle line of Henderson street is not authorized by law and in fact is within the specific prohibition of section 27 of "An Act concerning railroads," R.S. N.J.1937, 48:12–50, 3 Comp.St. New Jersey, 1910, p. 4232, Revision of 1903, as amended by P.L.N.J.1906, p. 663. This is as follows:

"27. *Crossings in cities and towns above or below grade; permits; bridges over streets or highways.*—Where any railroad shall cross any street or highway in any city or town it shall be either above or below the grade thereof, at such distance as shall not interfere with the free and uninterrupted use of such street or highway, unless the common council or other governing body of the city (or town, incorporated as such) in charge of the streets, shall grant permission to the railroad company to cross such street or highway at grade. Provided, that such permission shall not be necessary for the purpose of crossing at grade any street or highway which at the time of the acquirement of the right of way is not in use for pedestrians or wagons, either at the point of crossing or at some other point between the crossing the nearest terminus of such street or highway; where a railroad is constructed above the grade of any street or highway by a bridge, it shall be lawful for the company to erect piers for the support and safety of the bridge, which piers may be located at the outer edge of the wagonway, so as not to encroach thereon, and may extend thence into the sidewalk, or place left therefor; provided, that from the land on each side of said street or highway, so much shall be added to the sidewalk on that side and thrown open to public use for such purpose, as shall be occupied by the pier on that side."

In other words, it is the contention of the appellees that no railroad bridge whether purporting to be authorized by municipal authority or not may encroach upon the wagonway of a street. If it does so, as in the case at bar, it constitutes a nuisance and any one injured thereby may recover his damages.

The appellant for its part contends that its structure, as built and maintained and ratified by the ordinance of the board of commissioners of March 6, 1934, was authorized by section 30 of chapter 145, page 377, of the Pamphlet Laws of New Jersey of 1925, R.S.N.J.1937, 48:12–79, Comp.St.Supp.N.J.1930, § 170—30, entitled, "An act to amend an act entitled 'An act concerning railroads, Revision of 1903,'" and is therefore a lawful structure. The act referred to states as follows:

"30. In any municipality it shall be lawful for the proper municipal authorities to enter into such contracts with any railroad company or companies whose roads may lie wholly or partially within the municipality or whose route has been located therein as will secure greater safety to persons or property therein, or will facilitate the construction therein or maintenance of other than grade crossings of streets, highways or other railroads, or will provide for increased or improved station or terminal facilities and transportation service, or will improve the surroundings of or make more convenient

the access to a station or stations of such railroad within such municipality, and for such purposes the municipal authorities may construct sidewalks on, pave, repave, curb, gutter, lay out, open, vacate, or alter the lines and change the grade of any streets, highways, squares or other public areas or places, and may lay out, improve and maintain public parks, plazas, or other public places, as a part of such improvements, and the railroad company may locate, relocate, change, alter grades of, depress or elevate any of its railroad tracks, bridges or facilities, and construct new or additional tracks and transportation or station facilities as shall be specified and provided for in such contract, and for the purposes of this act such municipality and such railroad company may take by purchase or condemnation any lands required for such improvements, and make such changes or conveyances of their respective lands or any interest therein as will facilitate said work and the cost and expenses of any such lands, changes and improvements shall be borne by such municipality and such railroad company in such shares or proportions as may be provided in said contract."

The appellant contends that section 27, heretofore referred to, authorizes a railroad company to pass over any street by way of a bridge, without specific authority by way of ordinance from the municipal authorities so long as the bridge does not encroach upon the wagonway of the street, but that section 30 provides a method whereby legal authorization may be procured from municipal authorities to cross a public street which may be by way of an encroachment upon the wagonway.

We believe it unnecessary to define the term "wagonway" as used in section 27, other than to say it is obviously that part of a street ordinarily used for the passage of vehicles within the curb lines.

Neither the industrious search of counsel for the parties nor our own examination has disclosed any decided case on all fours with the case at bar. The appellees, however, rely strongly upon Howard v. Lehigh Valley R. Co., 106 N.J.L. 466, 150 A. 356, 357. In this case, the plaintiffs were injured when the automobile in which they were riding collided with a signal device maintained by the defendant railroad company in the center of a county highway in Manville, N. J., at a point near which the railroad tracks

of the defendant company crossed the highway. It appeared that permission to erect and maintain the signal device was obtained from the board of freeholders of Somerset county. It was the contention of the defendant that such permission legalized the structure and that the ruling of Lorentz v. Public Service R. Co., supra, was therefore applicable. A nonsuit was granted by the trial court and this ruling was reversed by the Court of Errors and Appeals. It should be noted, however, that the reviewing court specifically held that none of the authorizing statutes cited by the defendant clothed "the Board of Freeholders of Somerset county with specific and exact authority to grant the permission to respondents to legally erect and maintain the structures in question." These statutes cannot be considered in pari materia with those in the case at bar.

In Coan v. Public Service Electric & Gas Co., 105 N.J.L. 501, 142 A. 665, affirmed by the Court of Errors and Appeals in 105 N.J.L. 487, 144 A. 917, the plaintiffs were injured when their automobile collided with an electric light pole erected by the defendant company within the boundaries of the wagonway of Collings avenue, in the city of Camden. The defendant company defended upon the ground that the pole had been placed in position with the permission of the municipal authorities of the city. In this case, however, though by the first section of "An Act relating to electric light, heat and power companies," P.L.1896, c. 189, p. 322, R.S.N.J.1937, 48:7–1, 48:7–2, 3 Comp.St.N.J.1910, pp. 3152, 3153, §§ 35–37, such companies are given the right to erect their poles within the streets of any incorporated city upon grant of municipal authority, the act also provided: "That the same shall be so located as in no way to interfere with the safety or convenience of persons traveling on or over the said roads and highways." R.S.N.J.1937, 48:7–1, 3 Comp.St.N.J.1910, p. 3152, § 35.

In Sammak v. Lehigh Valley Railroad Co., 112 N.J.L. 540, 172 A. 60, the plaintiff's automobile, driven upon a highway in the village of Waverly, N. Y., ran into a signal tower, erected by the defendant railroad company in the public highway. The plaintiff contended that the structure was a nuisance because of the failure of the defendant company to put a warning light upon the tower. The defendant urg-

ed as a defense that the construction and maintenance of the tower had been authorized by the Public Service Commission of New York and the municipal authorities of the village of Waverly. But an examination of the New York statutes cited by the Court of Errors and Appeals in this case indicates plainly that the question of statutory construction in the cited case differs substantially from that in the case at bar.

In United New Jersey Railroad & Canal Co. v. Freeholders of Hudson & Essex, 89 N.J.Eq. 95, 104 A. 98, the Court of Errors and Appeals in construing section 27 of the law here in question, R.S. N.J.1937, 48:12–50, 3 Comp.St.N.J.1910, p. 4232, § 27, held that a railroad company had an absolute right to cross a public road by an overhead bridge. In the cited case, however, the right to place any permanent obstruction within the wagonway was not in dispute.

In Swift v. Delaware, Lackawanna & Western R. Co., 66 N.J.Eq. 34, 57 A. 456, 460, the Court of Chancery of New Jersey passed upon the legality of a track elevation allegedly made pursuant to the authority of the Act of 1874, P.L.1874, c. 281, p. 45, as amended in 1893, P.L.1893, c. 77, p. 157, Gen.Stat., p. 2689, par. 221. The statutes cited bear some resemblance to section 30 of the act here under discussion, R.S.N.J.1937, 48:12–79, Comp.St. Supp.1930, § 170—30, in that they provided that municipal authorities might enter into such contracts with railroad companies in respect to the location of the facilities of the latter as in the judgment of the municipal authorities would promote safety and the interests of the city. The learned Vice Chancellor stated: "The municipal authorities are thus, by the express terms of the act, made the judges of what changes are necessary in order to secure either of these objects, and, in the absence of fraud, their judgment that the change is necessary is final." See, also, Dodge v. Pennsylvania Railroad Co., 43 N.J.Eq. 351, 16 Stew. 351, 362, 11 A. 751, affirmed 45 N.J.Eq. 366, 18 Stew. 366, 19 A. 622.

In State, Read, prosecutor v. City of Camden, 53 N.J.L. 322, 21 A. 565, it was held that the charter of the city of Camden and the New Jersey statute relating to railroads and canals (March 19, 1874, p. 45, Revision 1877, p. 944, § 163) granted power to the city of Camden to enable it lawfully to pass an ordinance vacating part of a public street and contracting with a railroad company for the building of abutments thereon to carry tracks overhead.

In Caruso v. Town of Montclair, 90 N.J.L. 255, 100 A. 339, the Court of Errors and Appeals held that section 30 of the Railroad and Canal Act, 3 Comp.St. 1910, p. 4234, § 30, Act of 1901, as amended in 1903, is paramount and supersedes the Road Act of 1858, 4 Comp.St.1910, p. 4461, § 70, preventing a landowner from recovering damages (except as provided by statute in condemnation proceedings) for injury accruing to him through a change in grade of the street because of the elimination of a railroad grade crossing.

In Dickinson v. Delaware, Lackawanna & Western R. Co., 90 N.J.L. 158, 100 A. 203, 205, upon which the appellees place emphasis, the Court of Errors and Appeals in its opinion states that the authority of section 30 of the act concerning railroads, Revision of 1903, 3 Comp.St. N.J.1910, p. 4234, § 30, does not permit "a railroad company and a municipality to agree that the former shall erect and maintain a nuisance in a public highway." This must be deemed to be dicta, however, since that court theretofore stated:

"The last ground of reversal attacks the ruling of the trial court refusing to permit the appellant to put in evidence an agreement made between it and the borough of Chatham, the object of which was the elimination of grade crossings by the elevation of the appellant's right of way; this agreement being alleged to have been made under the authority of section 30 of the Act Concerning Railroads, Revision of 1903, (3 Comp.Stat.1910, p. 4234). The purpose of the offer, as stated by counsel at the time when it was made, was to show that the appellant had a legal right to elevate its road through the borough of Chatham in conformity to the provisions of that contract, and justified the appellant in its occupation of the described portion of the public way adjacent to the plaintiff's premises; in other words, that the structure complained of is authorized by law, and therefore cannot be a nuisance. The trouble with appellant's present contention is that the fundamental question in the prior litgation was nuisance vel non, and this question was resolved in favor of the plaintiff; and con-

sequently, in all subsequent litigations arising out of the maintenance of the structure the matter is res judicata between the parties. If the alleged contract had the force and effect now ascribed to it, and the appellant desired to take advantage thereof, it should have been produced and offered in evidence at the trial of the former suit. Having failed to do this, the company cannot now put it in evidence for the purpose of overriding the effect of the judgment in the earlier litigation."

Furthermore, we are unable to reconcile the statement of the Court of Errors and Appeals upon which the appellees rely with its decision in Caruso v. City of Montclair, supra, both cases being decided upon March 5, 1917, but in any event obvious distinctions can be drawn between the facts in the cases cited and those in the case at bar.

■ The cases referred to by counsel for the respective parties, while not explicitly in point, are none the less suggestive of the decision in the case at bar. In our opinion sections 27 and 30 of the act concerning railroads, as amended and now in force, are neither inconsistent nor incapable of reconciliation. We think it to be the case that section 27 was passed by the Legislature to the end that a railroad company might erect a bridge in any city or town, across any road or highway, without reference to any grant of municipal authority, provided always that the piers or structure supporting the bridge were "located at the outer edge of the wagonway, so as not to encroach thereon."

Section 30, however, as contended by the appellant, provides a method whereby a railroad company "may locate, relocate, change, alter grades of, depress or elevate any of its railroad tracks, bridges or facilities * * * as shall be specified and provided for in," a contract made between the municipality and the railroad company.

■ A literal interpretation of the language of the statute just quoted makes it apparent that a municipality may authorize or legalize the location[1] of a railroad bridge within the wagonway of a public street or highroad in a position which, unauthorized, would constitute a nuisance. It is true, however, that the right of the municipality to grant the authority to erect such a structure is limited by the terms of section 30 to the end that greater safety may be secured to persons or property, or to the end that the construction and maintenance of other than grade crossings may be facilitated or for the purpose of providing for increased or improved terminal facilities and transportation service. In the case at bar, in our opinion, the crossing of Henderson street by the appellant is within the purposes set forth by the Legislature in the act. The grant to the appellant to cross Henderson street in the manner prescribed by the ratifying ordinance of March 6, 1934, by the municipal authorities seems to us a proper exercise of the police power vested by the Legislature in the city of Jersey City, and in our opinion there was nothing unconstitutional in the delegation of this police power by the Legislature to the municipality and nothing unreasonable in the manner of its exercise by the city of Jersey City. For analogy, see Swift v. Delaware, Lackawanna & Western R. Co., 66 N.J.Eq. 452, 58 A. 939.

■ It follows therefore that the structure of the bridge, including the concrete foundation within the wagonway of Henderson street, was lawful and that members of the public, including the appellees, were required to take notice of its presence and situation and govern themselves accordingly.

In our opinion, the learned trial judge should have directed a verdict for the appellant as prayed for by it. So holding, the judgment of the court below is reversed and a new trial ordered.

---

[1] Locate: To designate the site or place of; to define the location or limits of, as by a survey; as, to locate a public building, a mining claim; to locate (the land granted by) a land warrant. Webster's New International Dictionary.