EDITH LORENTZ, WHO SUES, ETC., RESPONDENT, v. PUBLIC SERVICE RAILWAY COMPANY, APPELLANT.

Argued May 19, 1926—Decided October 18, 1926.

1. An elevated railroad structure erected in the streets of a city pursuant to statutory and municipal authority and in accordance

therewith, is not a nuisance but a lawful structure, and of its presence and situation the public must take notice.

2. In the absence of any requirement by statute or ordinance that such structure be lighted by the operating railroad company, the failure so to light it will not support an action for damages by one who at night, not seeing a column of such structure, collides with it.

On appeal from the Supreme Court.

For the appellant, *Leonard J. Tynan* and *Joseph Coult.*

For the respondent, *Charles Wagner* (*Abe J. David,* on the brief).

The opinion of the court was delivered by

PARKER, J.  The plaintiff, a girl twelve years of age, was injured on the night of December 1st, 1920, while riding as a passenger in an automobile, driven by her father, by its collision with one of the columns of the elevated structure maintained by the defendant on Central avenue, in Jersey City.

She brought suit, and at the trial the case, over objection and exception, was submitted to the jury, who found in her favor, and defendant prosecutes this appeal, alleging error in the refusal of the trial court to nonsuit, and its refusal to direct a verdict for defendant.  We pass the refusal to nonsuit, for the reason that when the plaintiff rested, the rights of defendant to maintain the structure in question were not supported by any evidence except the fact that the structure had been many years in use.

The complaint charged generally that defendant was in possession of, and using, the elevated structure, and that it was supported on columns set in the roadway of Central avenue in such wise as to interfere with, and impede, free public passage; that the structure darkened the space underneath it; that defendant had assumed the duty of lighting beneath it (on this point the proof wholly failed); that defendant failed to have a suitable light at the point where the

accident occurred; that by reason of these several features the structure was a nuisance and dangerous to travelers on the highway, and that on the date in question by reason of the premises, the plaintiff being driven in a southerly direction, was injured by the automobile striking one of the columns. The second count repeated these general allegations, alleging for a specific act of negligence that defendant had allowed the column to become dirty so that it could not readily be seen; the third count alleged inadequate and insufficient lighting.

The elevated structure had been in place since 1889. The building of such a structure was authorized by a statute of 1886 (*Pamph. L., p.* 126; *Comp. Stat., p.* 4993), subject to certain conditions precedent, the performance of which was not drawn in question.

At the trial, plaintiff's counsel admitted that "the structure was there lawfully under the permission of the municipal authorities," and the ordinance of Jersey City was duly admitted in evidence. There seems to be no provision in either the statute or the ordinance requiring the company to light the structure at night, and it was on a dark, rainy, misty night that the accident occurred. The character of the structure and the placing of the columns are specified in section 2 of the ordinance, and no claim is made that the company varied in any substantial way from these requirements. The map introduced at the trial shows that the elevated structure entered Central avenue from the east, curving toward the south until its direction coincided with that of the avenue, and from that point southward are two parallel rows of columns. Plaintiff's father, driving the car southward, saw one column at his left and presently ran into one on his right which he had failed to see.

From what has been said, it should be sufficiently obvious that the structure in question was a lawful one, sanctioned by legislative and municipal authority. It is elementary, of course, that any unlawful obstruction of the highway is *prima facie* a nuisance, and that the party responsible for it is liable in damages to one injured thereby. This was the theory of the leading case of *Durant* v. *Palmer,* 29 *N. J. L.* 544. But

it is equally well settled that the legislature may legalize what would otherwise be a nuisance. *Hinchman* v. *Paterson Horse Railway Co.,* 17 *N. J. Eq.* 75; *Halsey* v. *Rapid Transit Co.,* 47 *Id.* 380; *Paterson Railway Co.* v. *Grundy,* 51 *Id.* 213; *Beseman* v. *Pennsylvania Railroad Co.,* 50 *N. J. L.* 240; *State* v. *Lackawanna Railroad Co.,* 84 *Id.* 289; *State* v. *Riggs,* 91 *Id.* 456; appeal dismissed in this court, 92 *Id.* 575; *State* v. *Garrett,* 49 *Id.* 94, 693; *Simmons* v. *Paterson,* 60 *N. J. Eq.* 385; *State* v. *Erie Railroad Co.,* 84 *N. J. L.* 661.

It is significant that neither in the trial court nor in this court has the industry of counsel produced one decision in which recovery was had because of collision with a legalized permanent obstruction in a highway, apart from some special misuse of such structure. Our own decisions on this phase are instructive as indicating the general rule by the exceptions to it. Thus, in *Suburban Electric Co.* v. *Nugent,* 58 *N. J. L.* 658, the ground of recovery was not the electric pole, but some uninsulated wire left where deceased could touch it.

In *Morhart* v. *North Jersey Street Railway Co.,* 64 *N. J. L.* 236, a line of hose was laid across the street and unguarded.

In *Smith* v. *Atlantic City Railroad Co.,* 66 *N. J. L.* 307, a railway gate, a lawful obstruction to passage, was lowered upon plaintiff as she passed.

In *Sutphen* v. *Hedden,* 67 *N. J. L.* 324, the fence was insufficiently maintained and was blown down.

In *Record* v. *Pennsylvania Railroad Co.,* 76 *N. J. L.* 800, another railroad gate case, the gates were unlighted, in violation either of law or recognized custom, and, of course, they were in any event a temporary obstruction, of which notice would naturally be given by lights at night.

In *Opdycke* v. *Public Service Railway Co.,* 78 *N. J. L.* 576. the defendant utilized part of the roadway itself to build what amounted to a trap for stray horses, which this court characterized as a nuisance.

In *Geise* v. *Mercer Bottling Co.,* 87 *N. J. L.* 224, the defendant traction corporation allowed a hole to become worn in the pavement which caused an automobile truck to run wild.

In *Symes* v. *Morris County Traction Co.,* 1 *N. J. Mis. R.* 525, a pole, originally lawful, had broken and hung over the road so that plaintiff's intestate, driving a truck, ran into it.

In *Cochran* v. *Public Service Electric Co.,* 97 *N. J. L.* 480, the report does not seem to show the disposition of the case in the trial court, but, in fact, there was a nonsuit, which we sustained on the ground of non-privity of contract. The opinion intimates that the safety aisle in the street was a nuisance unless lighted, doubtless because no statutory authority for it appeared. The decision is not in point at this time.

To cap this line of decisions in which it was the misuse and not the use of a lawful structure in a public place that gave rise to a right of recovery, we have the case of *Matheke* v. *United States Express Co.,* 86 *N. J. L.* 586, in this court, and *W. B. Wood Co.* v. *Balsam,* 100 *Id.* 275.

The Matheke case incidentally involved a continuation of this very structure near the ferry in Hoboken. The plaintiffs were engaged in painting it, suspended on a temporary scaffold below it and over the street, and the defendant's express wagon ran into the scaffold. The question was what duty rested on the driver of the wagon to see and avoid it. In the opinion of the late Mr. Justice Garrison (at *p.* 589), it was said: "Permanent encroachments upon the highway, such as front door steps, hitching posts, awning poles and this elevated railroad structure itself, are incidents of the highway of which the traveling public must take notice; but merely temporary obstructions to travel, such as an open area or coal chute, the piling up of building materials, a lowered arc light or a sign or awning suspended so low as to impede travel, are matters as to which, in the absence of knowledge or actual warning, the presumption is that no such obstructions to travel will be encountered."

In *Wood Co.* v. *Balsam, ubi supra,* the defendant, by order of competent authority pursuant to statute, had attached a fire escape to his building which was required to be so low that plaintiff's truck in passing ran into it. The court said: "Those using the highway were obliged to take cognizance

of this lawful construction and to govern themselves accordingly."

A judgment for plaintiff was reversed.

It seems, therefore, clear, and indeed is not denied, that this elevated structure is a lawful structure erected pursuant to lawful public authority, and essentially similar in characteristics to the elevated railroads in New York, Boston, Philadelphia, Chicago, and, perhaps, other large cities. Structures of this kind, authorized by law and used to facilitate public travel, although they are physical obstructions to drivers of ordinary vehicles, and, perhaps, to pedestrians, are, nevertheless, not nuisances, and the public must take notice of them.

·The complaint counts, however, on the failure to light the columns so that they can more readily be seen at night, and the failure to clean them when they became dirty and dingy. But both these claims imply a duty, and we find no such duty laid down in the statute or ordinance, and without some such requirement in one or the other we are unable to say that any such duty existed. The right to erect and maintain the structure was conferred, without any such qualification, and it seems reasonable to say that where neither the statute nor ordinance mentions the matter it must be assumed that the ordinary public lighting of the street was considered sufficient in the premises.

As to the alleged failure to keep the columns clean, that is so fanciful as to be dismissed without further comment.

We conclude that when the case was all in, and the public authority for the erection and maintenance of the structure was manifest, a verdict should have been directed for the defendant, and that it was error to refuse such direction.

The judgment will be reversed to the end that a *venire de novo* issue.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, PARKER, MINTURN, BLACK, KATZENBACH, CAMPBELL, WHITE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, JJ. 11.