First Judicial District Court of Burlington County.

HILL CONSTRUCTION COMPANY, A CORPORATION, PLAIN-
TIFF, v. CENTRAL RAILROAD COMPANY OF NEW JER-
SEY, A CORPORATION, DEFENDANT.

Decided November 18, 1932.

Mathews, J. This is an action for damages to the plain-
tiff's property, consisting of a truck, concrete mixer and
pump, resulting from what it alleges to be the negligence
of the defendant railroad.

The case appears to involve a question which has not been
passed upon directly by the courts of this state and therefore
may well merit a somewhat extended discussion.

The facts are practically undisputed, and certainly are
insofar as they are material to a decision of the issues in
the case.

On December 26th, 1930, the plaintiff, Hill Construction
Company, a corporation, was the owner of a truck, and of a
concrete mixer and pump which it was transporting thereon.
The height of this load on the truck over all was eleven feet
eight inches. The truck, with its accompanying load, was
being driven by an employe of the plaintiff in a northerly
direction upon a highway of this state leading to Washington
in the township of Hampton, Hunterdon county, and was
approaching a certain bridge over the highway, bearing the
tracks of the defendant railroad, which the defendant had

erected some years before and was still maintaining. Approaching this bridge, or overpass of the railroad, the highway is on a slight down grade and on the day in question there was some slush upon the roadway.

The clearance between the roadway surface and the bottom of the defendant's bridge at the time of the events herein set forth was eleven feet eight and one-half inches on the extreme left side against the curb, as the truck approached it; eleven feet eight inches on the extreme right, and eleven feet five and one-half inches in the center. The first iron girder or beam of the bridge as the truck approached had a greater clearance than the second. Plaintiff's truck cleared this first girder or beam but the top of the load struck the second, knocking off the concrete mixer and injuring it and the pump and the truck.

It was stipulated that the damage to the plaintiff's property resulting from this collision was $304.08, and that this is the amount the plaintiff is entitled to recover if it is entitled to recover anything.

The defendant railroad company constructed the bridge or overpass in question about the year 1910 according to plans and specifications approved by resolution of the borough of Hampton, March 17th, 1910, which plans and specifications called for a minimum clearance of twelve feet, and so far as this case is concerned the bridge was constructed with that minimum clearance. Whether the difference in clearance at the time of the happening of the events in this case was caused by a filling in of the highway or a settling of the bridge, which latter seems highly improbable, or what the cause was, is not shown in the case, nor do I think it material to the issues involved.

The negligence which the plaintiff alleges on the part of the defendant is as follows:

"* * * The said defendant maintained said railroad bridge or underpass over the aforesaid highway at the aforesaid place, in a negligent and careless manner, in that said bridge or underpass did not provide a legal and proper clear-

ance, and in that there was no notice or warning to plaintiff or its agents, or others using said highway, of the fact that the said bridge or underpass was not of a sufficient height or clearance."

It occurs to me that perhaps the "underpass" mentioned was really more correctly an "overpass," but its use in conjunction with the word "bridge" indicates clearly that it is the bridge to which the plaintiff refers, and it was so treated by both parties and is so treated by the court.

That part of the allegation of negligence which refers to the maintenance of the bridge by not providing a legal and proper clearance I take it has been abandoned by the plaintiff, and I do not believe there is any merit to it in any event.

The real question in the case is whether or not under the circumstances the defendant owed plaintiff a duty to have put and maintained upon said bridge markings of a character provided by law for "obstructions."

The Motor Vehicle act of this state provides, section 21, subsection 4 (1 *Cum. Supp. Comp. Stat.* (1911-1924), *p.* 1998, §§ 135-70), as follows:

"No commercial motor vehicle, trailer, semi-trailer or tractor shall be operated on any highway in this state, the outside width of which is more than ninety-six inches, or the extreme over-length of which exceeds twenty-eight feet * * * *nor shall the height of such vehicle exceed twelve and one-half feet."*

Section 42 of the Traffic act (*Cum. Supp. Comp. Stat.* (1925-1930), *p.* 1567, §§ 179-71SR (1242), being *Pamph. L.* 1928, *ch.* 281, *p.* 757), provides as follows:

"Obstructions——All obstructions shall be marked clearly with black and white as follows:

(a) Alternate lines three to six inches wide with a slope of forty-five degrees.

(b) Checker board squares six to twelve inches on a side."

I take it that the meaning of this provision is that obstructions may be marked in either of the two manners. It is admitted that the defendant's bridge contained no such

markings nor any markings or indications whatsoever that it was an obstruction nor as to the clearance of the bridge over the roadway.

Plaintiff's contention is that this bridge under the circumstances was what has been sometimes termed a "legalized" obstruction. That such obstructions are recognized in this state is recognized by *Lorentz* v. *Public Service Railway Co.*, 103 *N. J. L.* 104; 134 *Atl. Rep.* 818, and the opinion contains an interesting and enlightening discussion of the subject generally. The case, as well as others in the state, indicates that such legalized obstructions when unlawfully maintained or used may constitute public nuisances. It is to be noted, also, that in this case the negligence alleged did not contain the element which the plaintiff has injected into this case, *i. e.*, the failure to mark the obstruction in accordance with the statute, and in fact probably could not have done so, as the case was decided in 1926. It does, however, cite a number of exceptions covered by specific cases.

In *Wood Co.* v. *Balsam*, 100 *N. J. L.* 275; 126 *Atl. Rep.* 480, the facts were somewhat similar but not parallel to this case. There the defendant maintained a fire escape which was not only in accordance with municipal authority but was mandatory under the ordinance. Plaintiff's truck was injured by driving under it, in a manner similar to the circumstances of the present case. It is also interesting to note the opinion of Mr. Justice Lloyd saying: "Nor is there here alleged any element of negligence; the sole contention being that the construction itself constituted a private nuisance for which the defendant would be liable."

In *Lorentz* v. *Public Service Railway Co.*, *supra*, the court further says:

"Structures of this kind authorized by law and used to facilitate public travel, although they are physical obstructions to drivers of ordinary vehicles, and perhaps to pedestrians, are nevertheless not nuisances and the public must take notice of them."

On the other hand the street and every part of it by force

of the common law is so far dedicated to the public that any act of obstruction that unnecessarily incommodes or impedes its lawful use by the public, is a nuisance. *Durant* v. *Palmer,* 29 *N. J. L.* 544; *Lorentz* v. *Public Service Railway Co., supra; Record* v. *Pennsylvania Railroad Co.,* 76 *N. J. L.* 800; 72 *Atl. Rep.* 62.

It would seem, then, that a user of a public highway has a right to assume that it is clear from unlawful obstructions but is bound to take notice of a legalized obstruction when lawfully maintained and used.

Defendant contends that, as it is incorporated under the Railroad act, the Motor Vehicle act and the Traffic act have no application to it whatsoever, and further that at the time the bridge was constructed it was constructed in entire accordance with the law as it then existed, with the plans and specifications and with the ordinance of the township. These can be considered to be facts, with the exception of the application of the two acts referred to to the defendant company. Certainly it can be conceded that unless there was a clearly expressed provision of law, subject to no other interpretation, making it mandatory upon the defendant to raise its bridges every time the legislature changed the motor vehicle or traffic laws, there would be no such duty placed upon it.

Now, the provision of the motor vehicle act above quoted goes no further in terms than to provide a maximum height of twelve and one-half feet for vehicles such as that of the plaintiff. There has been no provision brought to our attention which in specific terms deals with the height of legal bridges across highways. But it seems perfectly obvious that if the law permits a vehicle and load twelve and one-half feet high to be operated over the highways of this state, there can be but one sensible conclusion reached, and that is that the plaintiff had the legal right to operate its truck with such a load on the day in question without having the highway obstructed in any unlawful manner as to prevent its passage. Surely a highway has three dimensions—length, width and height—and an obstruction of the height or part

thereof is as much an obstruction as that of the width or part thereof.

Defendant's contention that it is immune from the operation of all other laws of the state save the Railroad act, under which it is chartered, I conceive to be entirely unsound. No authority has been cited to support it, nor does common sense sustain it. All the acts referred to were passed by the same authority, the legislature of the State of New Jersey, with no inference in any of them that the defendant was to occupy an enviable position of immunity from the operation of laws binding upon all other persons and corporations.

Defendant further contends that this provision of the law in the Traffic act is intended only to apply to "obstructions which impede all travel on the highway and have no regard for special clearances." This assumes that one can lawfully block any part of a highway less than the whole and be under no duty to mark the partial obstruction as an obstruction; in other words, one could maintain a chain or cable across the highway at any distance from the surface of the road up to twelve and one-half feet and still be under no duty to mark it as an obstruction if it were otherwise lawful for the chain or cable to be there. As stated before, I cannot conceive a highway of only two dimensions; and if there were no statutory provision limiting the height of loads, the question on this point might well be whether the barrier were one greater or less than a reasonable distance from the surface of the roadway and thereby either creating or not creating an "obstruction" to the highway.

The provision of the Traffic act requiring "obstructions" to be marked in a certain way must apply to so-called "legalized" obstructions. It seems clear that the legislature had no intention of providing for the proper marking of obstructions which have absolutely no right to exist. Where could there be logic in having the legislature say in effect, "if you insist upon violating the law and maintaining a nuisance which you have no right to maintain in any event, you must do it in a certain way, *i. e.*, by painting black and white lines

or checker board squares upon it?" Certainly it would be none the less an unlawful obstruction or nuisance and the provision could have no other effect than to perhaps charge a lawful user of a highway with contributory negligence in colliding with an obstruction which had no lawful right to exist.

It seems plain, therefore, that this provision applies to lawful or "legalized" obstructions. In holding that the duty to so mark defendant's bridge, or such part of it as was within twelve and one-half feet of the surface of the roadway, in the manner provided by the statute certainly places no great hardship upon a defendant which has constructed a lawful bridge over a highway prior to the passage of the Traffic act. It would seem entirely consistent with the results attempted to be secured by that legislation with due consideration to the defendant's rights. A bucket of paint and a few hours labor would comply with the law. It also seems entirely consistent with the adjudicated cases of this state.

The defendant saw fit not to go to the trouble of marking this bridge and relied upon immunity from the provisions of the Traffic act and Motor Vehicle acts by reason of being a railroad. But there is no such immunity, so far as I can find.

I, therefore, have come to the conclusion that after the passage of the provisions of the Motor Vehicle act and Traffic act above cited, there arose a duty upon the part of the defendant to lawful users of the highway to mark its "legalized" obstruction, or such parts of the bridge as constituted a "legalized" obstruction in the manner provided by the statute or in some manner which would have given warning to the plaintiff that the overpass did not have sufficient clearance to permit the passage of a load of legal height; that it was not such a "legalized" obstruction which, under the circumstances of the case and the existing provisions of the law the plaintiff was bound to notice and that the plaintiff had a general right to rely on the fact that the bridge either was of proper height or, if not, would have been so marked, and that there were no circumstances shown which took away the

right of the plaintiff's agent to such reliance; that the failure to so mark the obstruction was negligence on the part of the defendant which proximately resulted in the damage to the plaintiff and that there was no contributory negligence on the part of the plaintiff which would bar its recovery.

Judgment will therefore be entered in favor of the plaintiff and against the defendant in the sum of $304.08, with costs.